# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **SUSAN BEATY,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | )    **Civil Action No. CV-11-S-890-NE** |
| | ) |
| **CONTINENTAL AUTOMOTIVE SYSTEMS U.S., INC.,** | ) |
| | ) |
| **Defendant.** | ) |
| ——————————————— | ) |
| **INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO;** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | )    **Civil Action No. CV-10-S-2440-NE** |
| | ) |
| **CONTINENTAL AUTOMOTIVE SYSTEMS U.S., INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

The first action identified in the caption above — *Susan Beaty, et al. v. Continental Automotive Systems, U.S., Inc.*, Civil Action No. 11-890-NE — was commenced in the Eastern District of Michigan on October 21, 2010.[1]  It was transferred to this district on March 7, 2011.[2]  The plaintiffs in that case are two former employees of defendant, Continental Automotive Systems U.S., Inc.

---

[1] Doc. no. 1 (Complaint).

[2] *See* doc. no. 23.

("Continental"), the spouses of those former employees, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO ("UAW").  Plaintiffs sue individually and as representatives of a putative class of retired Continental employees, their spouses, and their dependants.[3]

The second action identified in the caption above — *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO v. Continental Automotive Systems U.S., Inc.*, Civil Action No. 10-2440-NE, was commenced in this district on September 10, 2010.[4]  The plaintiff in that case is the UAW, and the defendant is Continental.

At a hearing on January 31, 2012, the court ruled that the cases should be consolidated.  The court entered an order consolidating those cases on February 6, 2012.[5]  The cases are before the court on three motions:  the parties' joint motion for a status conference;[6] plaintiffs' unopposed motion for class certification for the purposes of settlement;[7] and the parties' joint motion for preliminary approval of their settlement agreement.[8]

---

[3] Doc. no. 36 (Motion for Class Certification).

[4] Doc. no. 1 (Complaint).

[5] *See* doc. no. 44.

[6] Doc. no. 35.

[7] Doc. no. 36.

[8] Doc. no. 43.

# I.  BACKGROUND

## A.    The Claims

The plaintiffs' claims stem from retiree benefit agreements negotiated by the UAW and Continental's predecessor corporations.  Specifically, the claims arise from Continental's automotive electronics manufacturing facilities in Huntsville, Alabama.[9]  In 2003, those facilities were owned by DaimlerChrysler Corporation ("Chrysler").[10]  Chrysler sold the facilities to Siemens VDO Automotive Electronics Corporation ("Siemens") in 2004.[11]  Prior to that sale, the UAW and Chrysler reached an agreement guaranteeing that Chrysler would sell the Huntsville facilities to Siemens *only if* Siemens committed to provide facility employees with benefits that "mirrored" those provided to UAW-represented Chrysler employees.[12]  The mirrored benefits would be provided for the duration of the then-current collective bargaining agreement between Chrysler and UAW, and any employee who retired before that agreement expired would be entitled to mirrored retirement benefits for the duration of his or her retirement.[13]

At the time of Chrysler's sale of its Huntsville facilities, Siemens and the UAW

---

[9] *See* doc. no. 1 ¶ 14.  Continental announced the closure of those facilities on August 31, 2009.  *Id.* ¶ 34.

[10] *See id.* ¶ 26.

[11] *Id.* ¶ 27.

[12] *Id.* ¶ 26.

[13] *Id.*

also entered into an agreement.  That agreement separately ensured that former Chrysler employees electing to remain at the Huntsville electronics facilities as Siemens employees would receive wages and benefits mirroring those offered to UAW-represented Chrysler employees through September 14, 2011.[14]  Another agreement stated that the terms of the UAW-Siemens agreements would be binding on the successors of Siemens, and, unaffected by changes in corporate structure.[15]  In 2007, Continental acquired Siemens and its Huntsville facilities.[16]  Thus, Continental assumed the contractual responsibilities of Siemens, and provided wages and benefits that mirrored those of UAW-represented Chrysler employees.[17]

The disagreement that led to these consolidated actions is that Continental has not provided mirrored *retiree* benefits to the former employees of the Huntsville facilities.  Retirees covered by the collective bargaining agreement between Chrysler and UAW receive retirement benefits from a voluntary employee benefit association trust established through the collective bargaining process.[18]  Rather than mirroring those benefits, however, Continental has taken the position that retiree benefits must be negotiated anew; that is, Continental refused to mirror the benefits negotiated

---

[14] Doc. no. 1 ¶¶ 28-29.  There were actually two agreements, one each for the production and clerical employees, containing an identical mirroring term.  *See id.*

[15] *Id.* ¶ 30.

[16] *Id.* ¶ 31.

[17] *Id.* ¶¶ 32-33.

[18] *Id.* ¶ 35.

between the UAW and Chrysler, and instead insisted on direct negotiation between UAW and Continental to establish a retiree benefits agreement.[19]  Plaintiffs aver that such refusal to mirror benefits provided to Chrysler retirees violated the collective bargaining agreement with Siemens, as Continental is the corporate successor of Siemens, and that Continental's refusal to provide mirrored benefits is also a violation of the Employee Retirement and Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") and the Labor Management Relations Act of 1947, 29 U.S.C. §§ 141, 167, 171 *et seq.* ("LMRA").[20]

## B.   Procedural Background

As noted in the introduction to this opinion, the first action listed in the caption was initially filed in the Eastern District of Michigan, but was transferred to this district and assigned to the undersigned as trial judge.[21]  At the time that case was transferred, UAW and Continental were already before this court, litigating another issue stemming from their collective bargaining agreements.[22] Motions to consolidate were filed in both actions.[23]  At oral argument, all parties agreed that consolidation

---

[19] Doc. no. 1 ¶ 36.  Since the expiration of the collective bargaining agreements on September 14, 2011, Continental has provided retiree medical benefits to the members of the putative class, while maintaining its position that it has no contractual obligation to do so.  *See* doc. no. 43-1 (Proposed Settlement Agreement) § 5.

[20] *Id.* ¶¶ 7, 37-47.

[21] Doc. no. 23.

[22] *See International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO*, No. 10-S-2440-NE.

[23] *See, e.g.*, doc. no. 28.

was proper, and the court now has granted the motion to consolidate.[24]

Plaintiffs filed an unopposed motion for class certification for the purpose of settlement on August 31, 2011.[25]  In a brief accompanying plaintiffs' motion, counsel stated that under the terms of the parties' tentative settlement agreement, Continental would agree to provide funding that would allow all class members to receive lifetime retiree medical benefits from the retirement benefits trust established by the UAW-Chrysler collective bargaining agreement.[26]  To effectuate that agreement, Continental is obligated to make three payments to the trust, totaling $23,846,342.47.[27]  There are 93 retiree members of the putative class, as well as spouse and dependant members.[28] Continental filed a response stating that it does not object to any of the relief sought in plaintiffs' motion.[29]  On January 28, 2012, the parties filed a joint motion for preliminary approval of the proposed settlement agreement.[30]

---

[24] Doc. no. 44.

[25] Doc. no. 36.

[26] Doc. no. 37, at 2.

[27] Doc. no. 43 (Joint Motion for Preliminary Approval of Settlement) ¶¶ 10-11.  According to the terms of the settlement agreement, the final amount will be adjusted to account for interest and benefits already paid by Continental.  *See* doc. no. 43-1 ¶ 4.3.2.

[28] Doc. no. 36 ¶ 4.

[29] Doc. no. 39.

[30] Doc. no. 43.

## II.  MOTION TO CERTIFY CLASS FOR SETTLEMENT PURPOSES

### A.      Class Approval Procedure

In order for a case to proceed as a class action, "the court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A). The fact of settlement does not diminish this court's responsibilities, except in one respect.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."  *Amchem Products, Inc. v. Windsor*, 528 U.S. 591, 620 (1997).

In all other respects, the remaining Rule 23 class certification criteria "demand undiluted, even heightened, attention in the settlement context."  *Id.*  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *Id.*

Thus, even though settlement "is relevant to a class certification," *and*, "is a factor" to be considered "in the calculus," the mere fact of agreement

> does not inevitably signal that class action certification should be granted more readily than it would be were the case to be litigated.  For reasons the Third Circuit aired, see [*Georgine v. Amchem Products, Inc.*,] 83 F.3d 610, 626-635 (1996), proposed settlement classes sometimes warrant more, not less caution on the question of certification.

*Id.* at 620 & n.16.

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions.  District courts are required to conduct a "rigorous analysis" of that rule's requirements.  *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 146, 161 (1982).  That obligation is not reduced when the court is presented a request for settlement-only class certification.  *Amchem Products,* 521 U.S. at 620.

Prior to the decision in *Amchem Products*, four circuits held "settlement obviates or reduces the need to measure a proposed class against the enumerated Rule 23 requirements."  *Id.* at 618 (citing cases).  The Supreme Court emphatically rejected that view.

> The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments — checks shorn of utility — in the settlement class context.  First, the standards set for the protection of absent class members serve to inhibit appraisals of the chancellor's foot kind — class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness.
>
> Second, if a fairness inquiry under Rule 23(e) controlled certification, eclipsing Rule 23(a) and (b), and permitting class designation despite the impossibility of litigation, both class counsel and court would be disarmed.  Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer, . . . and the court would face a bargain proffered for its approval without benefit of adversarial investigation . . . .
>
> Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted — that if a settlement

is "fair," then certification is proper. . . .

*Id.* at 621-22.  A district court retains broad discretion in deciding whether to certify a class.  *E.g.*, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).  However, *Amchem Products* mandates that such discretion be exercised within the framework of Rule 23.

## B.    Class Certification Requirements

The parties seeking class certification bear the burden of proof.  *See General Telephone*, 457 U.S. at 161.  Rule 23(a) states four threshold requirements applicable to all class actions:  (1) *numerosity* ("the class is so numerous that joinder of all members is impracticable"); (2) *commonality* ("there are questions of law or fact common to the class"); (3) *typicality* (the named parties' claims or defenses "are typical . . . of the class"); and (4) *adequacy of representation* ("the representative parties will fairly and adequately protect the interests of the class").

### 1.    Rule 23(a)(1):  *numerosity*

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable."  "The reason for [the numerosity] requirement is obvious.  Only when joinder is impracticable is there a need for a class action device."  1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3.01, at 3-4 (3d ed. 1992).

Plaintiffs state that there are 93 retiree members of the putative class, as well as spouses and dependents of retirees.[31]  That is sufficient to satisfy the numerosity requirement.  "While there are no rigid numerical guidelines for determining impracticability of joinder, courts have observed that generally less than 21 is inadequate; more than 40 is adequate; and numbers in between 21 and 40 are given varying treatment."  5 James Wm. Moore *et al., Moore's Federal Practice* ¶ 23.22[3][a], at 23-63 (3d ed. 1997); *see also Cox v. American Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir.) (quoting earlier edition of *Moore's* with approval), *cert. denied*, 479 U.S. 883 (1986).

## 2.    Rule 23(a)(2): *commonality*

Rule 23(a)(2) requires that there be "questions of law *or* fact common to the class" to justify certification (emphasis supplied).  The commonality requirement, together with the numerosity test of Rule 23(a)(1), "form the underlying conceptual basis supporting class actions."  *Newberg, supra,* § 3.10, at 3-47.

> The class-action was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. . . .  Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. . . .  For in such cases, the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.

---

[31] Doc. no. 36 ¶ 4.

*Falcon*, 457 U.S. at 155 (citations and internal quotation marks omitted).

It is important to recognize that Rule 23(a)(2) "does *not* require that *all* . . . questions of law and fact raised by the dispute be common." *Cox v. American Cast Iron Pipe*, 784 F.2d at 1557 (emphasis supplied). Rather, the test for commonality "is qualitative rather than quantitative — that is, there need be only a single issue common to all members of the class." *Newberg*, *supra,* § 3.10, at 3-50. Further, the rule "requires only that resolution of the common questions affect all or a substantial number of the class members." *Shipes v. Trinity Industries*, 987 F.2d 311, 316 (5th Cir.), *cert. denied*, 510 U.S. 991 (1993).

These consolidated actions satisfy the commonality requirement. The claims of all class members turn on a common question: that is, whether Continental was required, under the terms of its agreement with Siemens and the referenced collective bargaining agreements, as well as the LMRA and ERISA, to mirror Chrysler retiree benefits. There may be some discrete questions of fact that differ among class members, particularly on the question of damages. Even so, "the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988); *see also Jenson v. Eveleth Taconite Co.*, 139

F.R.D. 657, 664 (D. Minn. 1991) ("The commonality requirement may be met if the common question goes to liability despite individual differences in damages."). The district court in *Jenson* certified a class in a sexual harassment suit over an employer's argument that

> reactions to profanity, pornography, or other potentially offensive material are highly individualized. The Court does not disagree. The Court finds, however, that the common question of law is not how an individual class member reacted, but whether a reasonable woman would find the work environment hostile . . . . As such, plaintiffs' claims meet the commonality requirement.

*Jenson*, 139 F.R.D. at 665 (citations omitted). Accordingly, this court finds that the commonality requirement of Rule 23(a)(2) is satisfied.

### 3.    Rule 23(a)(3):  *typicality*

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." Class representatives must possess the same interests and suffer the same injuries as the class members. *Sollenbarger v. Mountain States Telephone & Telegraph Co.*, 121 F.R.D. 417, 424 (D.N.M. 1988). Typicality does not demand identical *factual* circumstances. Even so, the claims of the named plaintiffs and the class members must be based on the same *legal* or remedial theory. *Id.* at 430.

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged

conduct.  In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to the class, and that wrong includes the wrong to the plaintiff.  Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*Newberg, supra,* § 3-13, at 3-76 (footnote omitted).  In other words, when the interests of the representative parties are sufficiently aligned with the absent members of the putative class, then the named plaintiffs, in pursuit of their personal claims, also will advance the interests of class members.

Based upon a review of the pleadings, this court finds that the claims of the four named plaintiffs are typical of the class as a whole.  Each potential class member claims a contractual right to retiree health benefits mirroring those provided to UAW-represented Chrysler retirees.  The same relief is sought by each potential class member, as all were employed according to the terms of the same collective bargaining agreements.

### 4.    Rule 23(a)(4):  *adequacy of representation*

Rule 23(a)(4) allows certification only if "the representative parties will fairly and adequately protect the interests of the class."  Assessment of the adequacy of representation turns upon two subsidiary issues:  (1) whether representative parties have common interests with unnamed class members; and, (2) whether the representative parties will vigorously prosecute the interests of the absent class

members through qualified and competent counsel.  The first criterion is synonymous with the typicality requirement of Rule 23(a)(3):  *i.e.*, if the named plaintiffs' claims are not typical of the class, then the representative parties cannot fairly and adequately protect the interests of absent class members.  *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) ("The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members.").  As previously discussed, the typicality prerequisite of Rule 23(a)(3) has been met, and this court now embellishes that finding with these determinations:  no conflicts have been demonstrated between the claims of the named plaintiffs and the interests of absent class members; and, in the event of trial, the representative parties would vigorously prosecute the interests of the class.

Competence of counsel is the other component of the adequacy test.  In addition to the competency requirement of Rule 23(a)(4), Rule 23(g) specifies criteria for the court to consider when appointing class counsel.  The requirements of both rules are met here.  Specifically, Rule 23(g) mandates that the court consider:

> (*i*) the work counsel has done in identifying or investigating potential claims in the action;

> (*ii*) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(*iii*) counsel's knowledge of the applicable law; and

(*iv*) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  There is no indication that plaintiff's attorney, William Wertheimer, has failed to satisfy the first factor.  He has extensive experience litigating similar retiree benefits actions in courts throughout the country.[32]  Thus, the second and third factors are met.  Finally, the UAW has paid both expenses and fees for plaintiff's attorney.[33]  There is no question that he has committed — and will continue to commit — the resources necessary to represent the class.  Neither defendants nor this court question his skill or ability to vigorously and competently represent the class.

## C.    Class Action Categories

In addition to satisfying all prerequisites of Rule 23(a), parties seeking class certification must show that the action is maintainable under at least one of the three sub-categories of Rule 23(b).  Here, plaintiffs sought certification under Rules 23(b)(1) and 23(b)(2) in their motion for class certification, but the proposed settlement agreement specifically requires certification under Rule 23(b)(2).[34]

---

[32] *See generally* doc. no. 36-1 (Declaration of William Wertheimer).

[33] *Id.* ¶ 7.  For this reason, there is no payment of attorney's fees in the proposed settlement agreement.

[34] Doc. no. 37, at 9; doc. no. 43-1 (Proposed Settlement Agreement) ¶ 11.1.1.

15

Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." It is intended primarily for civil rights actions. *Amchem Products,* 521 U.S. at 614 ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of 23(b)(2) class actions.). A 23(b)(2) class is expressly limited to cases in which "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole" and, thus, deliberately excludes actions in which monetary damages are the prime, or sole relief sought. Fed. R. Civ. P. 23(b)(2). Plaintiffs maintain that until the date on which Continental reached the tentative settlement, the company "refused to provide the Chrysler level of benefits to any class members and . . . refused to acknowledge the lifetime duration of these benefits to any class member."[35] Although plaintiffs seek funding of a retiree benefits trust, "monetary relief has been granted on a classwide basis in Rule 23(b)(2) actions, provided that these awards are either (1) equitable in nature or (2) secondary or ancillary to the general scheme of injunctive or declaratory relief." *Newberg, supra,* § 4.14, at 4-46 to 4-47. Here, plaintiffs seek declaratory relief affirming that Continental has an obligation under the collective bargaining agreement reached between UAW and Chrysler (and

---

[35] Doc. no. 37, at 10-11.

subsequently affirmed by Siemens), and injunctive relief requiring Continental to provide retirement benefits that mirror those of the predecessor collective bargaining agreements.[36]   To the extent that plaintiffs seek monetary relief, such relief is equitable in nature — that is, it is prospective, and intended to maintain a specific level of benefits for the class members, rather than a compensatory award for past damages.  Thus, a class action is proper under Rule 23(b)(2).

Here, all of the requirements of Rule 23(a) are satisfied, and the case falls within the scope of Rule 23(b)(2).  Accordingly, the motion for class certification is due to be granted.

### III.  MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

### A.    Legal Standard

Any class action settlement requires court approval.  Fed. R. Civ. P. 23(e).  First, the court must grant preliminary approval of the settlement.  *See, e.g.*, *Dalton v. Cardworks Servicing, LLC*, No. CA 09-00563-CB-C, 2010 WL 5341939, at *2 (S.D. Ala. Nov. 19, 2010) ("The Court's initial task is to make a 'preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class.'") (quoting *Smith v. William Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 WL 2401149, at *1 (S.D. Fla. June 15, 2010)).  "It is well settled that in order to approve a settlement, the district court must find that it is fair, adequate and

---

[36] Doc. no. 1, at 12.

reasonable and is not the product of collusion between the parties." *Carnegie v. Mutual Savings Life Insurance Co.*, No. CV-99-S-3292-NE, 2004 WL 3715446, at *17 (N.D. Ala. Nov. 23, 2004) (Smith, J.) (internal quotation marks and citations omitted).   The court should consider six factors in evaluating the fairness, reasonableness, and adequacy of the proposed terms of settlement:

(1)    the stage of the proceedings at which the settlement was achieved;

(2)    the likelihood of success at trial;

(3)    the range of possible recovery;

(4)    the point on or below the range of possible recovery at which the settlement is fair, adequate, and reasonable

(5)    the complexity, expense, and duration of litigation; and

(6)    the substance and amount of opposition to the settlement.

*Id.* (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

**B.    Application of Factors**

**1.    The stage of the proceedings at which settlement was achieved**

Even though the parties reached the settlement agreement before extensive discovery was conducted, that fact is not consequential "because the parties had equal access to the core legal agreements at issue" and, thus, could enter into negotiations without the necessity of formal discovery.[37]   The parties had been negotiating the

---

[37] Doc. no. 43 ¶ 21.

impact of the plant closing on retiree benefits since November of 2009, and litigating the issues involved in this case since 2010.[38]  Thus, the proceedings have advanced sufficiently for the parties to reach an agreement that is fair, adequate, and reasonable. The collective bargaining agreements under which plaintiffs claimed retiree health benefits expired on September 14, 2011.[39]  For that reason, it is especially appropriate that the parties reach a settlement agreement; plaintiffs could lose all of their benefits absent resolution of this case or a court-ordered injunction that the benefits be maintained while it is pending.

### 2.    Likelihood of success at trial

Both plaintiffs and Continental faced the risk of an adverse adjudication at trial. The Eleventh Circuit has not ruled definitively on whether retirement benefits have vested in a factual scenario similar to that presented in these consolidated cases. *Compare United Steelworkers of America v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988) (holding that benefits had vested, and employer was obligated to pay, even after expiration of agreement) *with Stewart v. KHD Deutz of America, Corp.*, 980 F.2d 698 (11th Cir. 1993) (distinguishing *Conners Steel* where contract language was ambiguous, and remanding for consideration of extrinsic evidence to determine whether benefits had vested).  With success at trial guaranteed to neither party, this

---

[38] *Id.*

[39] *Id.*

factor weighs in favor of preliminary approval of the settlement; there is nothing unfair, unreasonable, or inadequate about the settlement of a case with an uncertain outcome.

### 3.    The range of possible recovery

In their complaint, plaintiffs sought relief in the form of retiree medical benefits mirroring those provided by the trust to UAW-represented Chrysler retirees.[40]   If these cases were to proceed to trial and Continental prevailed, plaintiffs could be left with no retiree benefits at all.  Thus, the high end of the range of trial recovery would be benefits equal to those provided to former Chrysler employees through the trust, and the low end is no recovery at all.  The terms of the settlement agreement require Continental to add funds to the trust already serving the Chrysler retirees so that plaintiffs may receive benefits from that trust for the remainder of their respective lives.[41]   In other words, the settlement provides plaintiffs with a recovery matching their best potential outcome at trial.

Although the settlement awards plaintiffs the exact relief they sought in their complaint, it is beneficial to Continental as well.  The settlement agreement allows Continental to resolve all issues stemming from the closure of the Huntsville facilities.  It additionally allows Continental to relinquish the responsibility of being

---

[40] Doc. no. 1, at 12.

[41] *See generally* doc. no. 43-1 § 4.

the plan administrator for plaintiffs' retiree medical benefits, and to remove retiree medical liability from its corporate balance sheet.[42]  Thus, the settlement agreement is fair, adequate, and reasonable, based on the range of possible recovery.

4.    **The point on or below the range of possible recoveries at which the settlement is fair, adequate, and reasonable**

The fourth factor for evaluation is inextricably linked with the third.  As discussed in the previous subsection, the proposed settlement agreement lies at the maximum end of the range of possible recoveries for plaintiffs.  Thus, it is undeniably fair, adequate, and reasonable, and this factor weighs in favor of preliminary approval of the settlement.

5.    **The complexity, expense, and duration of litigation**

As previously stated, the parties have been negotiating the issue of retiree medical benefits since November of 2009, and litigating the issue (in separate actions) since September of 2010.  The parties began negotiating a resolution to this litigation in April of 2011, but did not agree on the basic terms of the proposed settlement agreement until five months had passed.[43]  The parties have already incurred considerable expense in the process of reaching the proposed settlement agreement.[44]  Approving the settlement will avoid unnecessary, further expenditure

---

[42] Doc. no. 43 ¶ 17.

[43] *Id.* ¶ 19.

[44] *Id.*

21

of the resources of the parties and of the court.

**6.     The substance and quantity of opposition to the proposed settlement**

The class members have not yet been given official notice of the proposed settlement agreement and it is, therefore, premature to evaluate the substance and amount of opposition to the proposed settlement.   Nevertheless, a court may grant *preliminary* approval — even when it is too early in the process to gauge potential opposition among class members.   *See Dalton*, 2010 WL 5341939, at *6.   Indeed, such information will rarely be available at the preliminary approval stage. Moreover, class counsel met with class members on August 30, 2011, and "those who attended the meeting expressed support for the settlement; no one expressed opposition at that time."[45]

Based upon a review of the foregoing factors, this court finds that the proposed settlement agreement appears to be fair, adequate, and reasonable.   Thus, the court finds that the motion for preliminary approval of the settlement agreement is due to be granted.

### IV  CONCLUSION AND ORDERS

For the foregoing reasons, plaintiffs' unopposed motion for class certification is GRANTED.   The court CERTIFIES a class of all persons who are former employees of Continental (and their spouses and dependants) who were represented

---

[45] *Id.* ¶ 20.

in collective bargaining by the UAW and were eligible to receive benefits under Continental's group medical program and who are retired from one of the Huntsville facilities and not currently entitled to receive retiree health benefits from the Chrysler trust.  The court DETERMINES that class claims are those alleged in the complaint. The court APPOINTS William Wertheimer as counsel for the class.

The joint motion for preliminary approval of the settlement agreement is GRANTED.  The scheduling of the final fairness hearing, and deadlines associated therewith, will be announced in a separate order entered simultaneously herewith. The parties' joint motion for a status conference are DENIED as moot.

DONE and ORDERED this 6th day of February, 2012.

_____
United States District Judge