FILED

2012 May-21  AM 07:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SUSAN BEATY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-11-S-890-NE |
| | ) | |
| CONTINENTAL AUTOMOTIVE SYSTEMS U.S., INC., | ) ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, AFL-CIO; *et al.*, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-10-S-2440-NE |
| | ) | |
| CONTINENTAL AUTOMOTIVE SYSTEMS U.S., INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The first action identified in the caption above — *Susan Beaty, et al. v. Continental Automotive Systems, U.S., Inc.*, Civil Action No. 11-890-NE (the "*Beaty* case") — was commenced in the Eastern District of Michigan on October 21, 2010.[1] It was transferred to this district on March 7, 2011.[2] The named plaintiffs in that case are two former employees of defendant, Continental Automotive Systems U.S., Inc.

---

[1] Doc. no. 1 (Complaint).  Unless otherwise noted, all document numbers cited refer to the *Beaty* case.

[2] *See* doc. no. 23.

("Continental"), the spouses of those former employees, and the international union of which the employees were members, the United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO ("UAW").  Plaintiffs sue individually and as representatives of a putative class of retired Continental employees and their spouses and dependants.[3]

The second action identified in the caption — *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO v. Continental Automotive Systems U.S., Inc.*, Civil Action No. 10-2440-NE (the "*UAW* case") — was commenced in this district on September 10, 2010.[4]  The sole plaintiff in that case is the UAW, and the sole defendant is Continental.

At a hearing conducted on January 31, 2012, the court ruled that the cases should be consolidated, and entered an order of consolidation on February 6, 2012.[5]  On the same day, the court certified the class, preliminarily approved the proposed settlement agreement, and set a final fairness hearing for April 4, 2012.[6]  The cases are before the court on the parties' joint motion for final approval of their settlement agreement.[7]

---

[3] *See* doc. no. 1 ¶ 14.

[4] *UAW* case, at doc. no. 1 (Complaint).

[5] *See* doc. no. 44.

[6] *See* doc. no. 45 (Memorandum Opinion); doc. no. 46 (Order).

[7] Doc. no. 49.

# I.  FINDINGS OF FACT

## A.    Background

The plaintiffs' claims stem from retiree benefit agreements negotiated by the UAW and Continental's predecessor corporations.  Specifically, the claims arise from Continental's automotive electronics manufacturing facilities in Huntsville, Alabama.[8]  In 2003, those facilities were owned by DaimlerChrysler Corporation ("Chrysler").[9]  Chrysler sold the facilities to Siemens VDO Automotive Electronics Corporation ("Siemens") in 2004.[10]  Prior to that sale, the UAW and Chrysler reached an agreement guaranteeing that Chrysler would sell the Huntsville facilities to Siemens *only if* Siemens committed to provide facility employees with benefits that "mirrored" those provided to UAW-represented Chrysler employees.[11]  The "mirrored benefits" would be provided for the duration of the then-current collective bargaining agreement between Chrysler and the UAW, and any employee who retired before that agreement expired would be entitled to mirrored retirement benefits for the duration of his or her retirement.[12]

At the time of Chrysler's sale of its Huntsville facilities, Siemens and the UAW

---

[8] *See* doc. no. 1 ¶ 14.

[9] *See id.* ¶ 26.

[10] *Id.* ¶ 27.

[11] *Id.* ¶ 26.

[12] *Id.*

also entered into an agreement.  That "mirrored benefits agreement" separately ensured that former Chrysler employees electing to remain at the Huntsville electronics facilities as Siemens employees would receive wages and benefits mirroring those offered to UAW-represented Chrysler employees through September 14, 2011.[13]  Another agreement stated that the terms of the UAW-Siemens agreements would be binding on the successors of Siemens, and, unaffected by changes in corporate structure.[14]  In 2007, Continental acquired Siemens and its Huntsville facilities.[15]  Thus, Continental assumed the contractual responsibilities of Siemens, and provided wages and benefits that mirrored those of UAW-represented Chrysler employees.[16]

The disagreement that led to these consolidated actions is that Continental has not provided mirrored *retiree* benefits to the former employees of the Huntsville facilities.  Retirees covered by the collective bargaining agreement between Chrysler and the UAW receive retirement benefits from a voluntary employee benefit association trust established through the collective bargaining process.[17]  Rather than mirroring those benefits, however, Continental has taken the position that retiree

---

[13] Doc. no. 1 ¶¶ 28-29.  There were actually two agreements, one each for the hourly and salaried employees, containing an identical mirroring term.  *See id.*

[14] *Id.* ¶ 30.

[15] *Id.* ¶ 31.

[16] *Id.* ¶¶ 32-33.

[17] *Id.* ¶ 35.

benefits must be negotiated anew; that is, Continental refused to mirror the retiree

benefits negotiated between the UAW and Chrysler, and instead insisted on direct

negotiation between the UAW and Continental to establish a retiree benefits

agreement.[18]

## B.    The Chrysler-UAW Trust

In October of 2007, Chrysler and the UAW negotiated a national settlement

agreement regarding the future provision of retiree health benefits for Chrysler

retirees who were represented by the UAW.[19]   That Chrysler settlement agreement

provided for the termination of Chrysler's retiree medical plan, and created a

voluntary employees' beneficiary association trust (the "Chrysler-UAW Trust") to

provide retiree health benefits for UAW-represented Chrysler retirees in the future.[20]

The United States District Court for the Eastern District of Michigan approved that

settlement agreement on July 31, 2008.[21]

In early 2009, Chrysler declared bankruptcy.   As part of the bankruptcy

proceeding, Chrysler and the UAW entered into a new retiree settlement agreement

---

[18] Doc. no. 1 ¶ 36.  Since the expiration of the collective bargaining agreements on September 14, 2011, Continental has provided retiree medical benefits to the members of the putative class, while maintaining its position that it has no contractual obligation to do so.  *See* doc. no. 49-1 (Settlement Agreement) § 5.

[19] *See* doc. no. 9 (Motion to Dismiss), at 4.

[20] *Id.*

[21] *See International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO v. Chrysler L.L.C.*, No. 2:07-cv-14310, (E.D. Mich. July 31, 2007), at doc. no. 47.

that modified the funding structure of the Chrysler-UAW Trust so as to provide retiree health benefits to UAW-represented Chrysler retirees, beginning January 1, 2010.[22]  The United States Bankruptcy Court for the Southern District of New York approved that agreement on June 1, 2009.  *See In re Chrysler, L.L.C.*, 405 B.R. 84, 92 (Bankr. S.D.N.Y. 2009).

On August 31, 2009, Continental announced its intent to close the Huntsville facility, effective December 31, 2010.[23]  In November of 2009, Continental and the UAW began negotiations regarding the effects of the closure of the Huntsville facility.[24]  During those "effects bargaining negotiations," Continental sought to negotiate a new retiree medical plan.[25]  The UAW maintained the position that Continental was obligated to provide the same retiree health benefits as were being provided under the Chrysler-UAW Trust.[26]

On October 5, 2010, Continental initiated a grievance regarding the interpretation of the mirrored benefits agreement.  Continental notified the UAW and its local chapters that Continental took the position that the mirrored benefits agreement did not require it to provide the same level of retiree medical benefits that

---

[22] *See* doc. no. 9, at 4.

[23] *See* doc. no. 1 ¶ 34, doc. no. 9, at 5.

[24] Doc. no. 9, at 5.

[25] *See* doc. no. 1 ¶ 36.

[26] Doc. no. 9, at 5.

were provided by the Chrysler-UAW Trust.[27]  Continental took the position that it was obligated to provide only those wages and benefits that were provided by *Chrysler itself* to similarly-situated employees, and not to match benefits provided by the *Chrysler-UAW Trust.*[28]  Continental stated that if the UAW disagreed with its position, it would submit the issue to arbitration, pursuant to the collective bargaining agreement.[29]

## C.    The Lawsuits

On September 10, 2012, the UAW filed the *UAW* case.[30]  The UAW sought to compel arbitration regarding cost of living allowance provisions in the mirrored benefit agreement.[31]  On November 15, 2010, Continental filed an answer and counterclaim to the complaint in the *UAW* case.[32]  In the counterclaim, Continental sought to compel arbitration on the retiree medical benefits grievance.[33]

On October 21, 2010, the individual plaintiffs and the UAW filed the *Beaty* case.[34] Plaintiffs alleged that the refusal by Continental to mirror benefits provided to Chrysler retirees violated the collective bargaining agreement with Siemens, as

---

[27] *Id.* at 5-6.

[28] *Id.* at 6.

[29] *Id.*

[30] *UAW* case, doc. no. 1 (Complaint).

[31] *Id.* at 9.

[32] *UAW* case, doc. no. 9.

[33] *Id.* at 8.

[34] Doc. no. 1.

Continental is the corporate successor of Siemens, and that the refusal by Continental to provide mirrored benefits is also a violation of the Employee Retirement and Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") and the Labor Management Relations Act of 1947, 29 U.S.C. §§ 141, 167, 171 *et seq.* ("LMRA"). Plaintiffs sought certification of the case as a class action.[35] Plaintiffs sought injunctive relief requiring Continental to provide lifetime retiree health benefits to the class.[36] Plaintiffs additionally sought a declaratory judgment that the parties' dispute over retiree medical benefits was not subject to arbitration.[37]

Continental filed a motion to dismiss the *Beaty* case.[38] Continental denied that it had changed the retiree health benefits it was providing to plaintiffs, and argued that with respect to active employees who had not yet retired, the dispute was subject to the grievance process and should be submitted to arbitration.[39] Moreover, Continental argued that the action should be dismissed because plaintiffs had failed to join the local union chapters in the action, and that plaintiffs had failed to plead sufficient facts to establish that there was a contract or an employee welfare benefit plan that provided for vested retiree medical benefits.[40]

---

[35] *Id.* at 12.

[36] *Id.* at 12.

[37] *Id.* at 13.

[38] Doc. no. 9.

[39] *Id.* at 17-20.

[40] *Id.* at 7-17.

On December 30, 2010, Continental filed a motion to change the venue of the *Beaty* case.[41]   The motion was granted, and the case was transferred to this court on March 7, 2011.[42]   As stated in the introductory section of this opinion, the *Beaty* case was consolidated with the *UAW* case on February 6, 2012.[43]

## D.   Settlement Negotiations

Continental and the UAW were engaged in intensive effects bargaining negotiations regarding the closure of the Huntsville facility from April through August of 2011.  On August 29, 2011, Continental and the UAW entered into an "effects bargaining agreement" regarding all outstanding issues.[44]   The effects bargaining agreement included a framework for the settlement of the retiree medical dispute underlying the *Beaty* case.[45]   The parties further agreed to dismiss with prejudice their claims in the *UAW* case following final approval of the settlement agreement in the *Beaty* case.[46]

The agreement regarding retiree medical benefits required Continental to pay approximately $23.8 million to the Chrysler-UAW Trust in order to fund retiree

---

[41] Doc. no. 14.

[42] Doc. no. 23.

[43] Doc. no. 44.

[44] Doc. no. 41 (Joint Memorandum of Litigation Status), at 2.

[45] *Id.*

[46] *Id.* at 3-4.

health benefits for the class.[47]  Plaintiffs' counsel conducted an independent analysis of the settlement terms.  He retained an expert, Stuart I. Wohl, to evaluate whether it would be better to create a new, stand-alone trust, or to seek the inclusion of the Huntsville retirees in the existing Chrysler-UAW Trust.[48]  Wohl concluded that inclusion in the Chrysler-UAW Trust would allow for the provision of benefits with lower administrative costs, greater investment options, and less expected volatility than an independent trust.[49]

The parties determined that inclusion in the Chrysler-UAW Trust was the best option.  From September of 2011 through January of 2012, the parties negotiated with each other and with the Chrysler-UAW Trust to determine the terms and conditions under which the class members would be accepted as participants in the Chrysler-UAW Trust.[50]  The parties entered into the settlement agreement on January 27, 2012.[51]

## E.    Settlement Agreement

The settlement agreement provides that Continental will pay $23,846,342.47

---

[47] Settlement Agreement § 4.3

[48] *See* doc. no. 43-9 (Expert Report of Stuart I. Wohl).  The parties filed a joint motion requesting permission for Continental to pay the costs related to commissioning Wohl.  Doc. no. 38.  The court granted that motion.  Doc. no. 42.

[49] Expert Report of Stuart I. Wohl, at 2.

[50] Doc. no. 43 ¶ 8.

[51] Settlement Agreement, at 21-22.

to the Chrysler-UAW Trust for the purpose of financing retiree health benefits for the class.[52]  That sum is to be reduced by an offset equal to the total projected cost to Continental of providing the class with retiree health benefits from January 1, 2012 until the Chrysler-UAW Trust begins providing retiree health coverage for the class.[53] The parties agreed on that reduction because the $23.8 million total was based on the assumption that the Chrysler-UAW Trust would assume coverage on January 1, 2012.[54] The length of the settlement negotiations, and the need to seek approval from the court, delayed the transfer of coverage.[55]  Continental continued to provide benefits in the interim.[56]  The actuaries for the parties agreed on the projected cost to Continental of each month of interim benefits.[57]  Once the settlement agreement has been given final approval, the parties will be able to calculate the total offset based on that formula.

Continental will make three payments to the Chrysler-UAW Trust in satisfaction of the settlement agreement.  The first, totaling $9 million less the amount offset for interim coverage, will be made within five business days of the effective date of the settlement agreement:  *i.e.*, within five business days of the expiration of

---

[52] *Id.* § 4.3.

[53] *Id.* § 4.3.2(a).

[54] *Id.* § 5.

[55] *Id.*

[56] Settlement Agreement § 5.

[57] *See id.* § 4.3.2(a).

the appeal period following the court's final approval of the settlement agreement.[57] The second payment, in the amount of $7,590,000, will be made on January 4 of the calendar year that begins immediately after the year in which the effective date occurs.[58]  The third and final payment, of $7,256,342.47, will be made on January 3 of the next calendar year.[59]

The settlement agreement will be implemented, and the Chrysler-UAW Trust will begin providing retiree medical coverage to the class, on the first day of the second month following the month in which the settlement becomes effective.[60] From that date forward, Continental will have no further obligation to provide retiree medical coverage to the class and will have no responsibility for the administration of the Chrysler-UAW Trust.[61]  Likewise, Continental will have no responsibility for the investment returns or financial performance of the funds paid pursuant to the settlement agreement once those funds are tendered to the Chrysler-UAW Trust.[62]

The parties and the Chrysler-UAW Trust entered into a participation agreement establishing the terms under which the class will participate in the Chrysler-UAW

---

[57] *Id.* §§ 1.15, 4.3.2.

[58] *Id.* § 4.3.3.

[59] *Id.* § 4.3.4.

[60] Settlement Agreement, §§ 1.15, 1.22. Thus, if the settlement agreement were to take effect on June 25, 2012, the implementation date would be August 1, 2012.

[61] *See id.* §§ 16.2-16.3.

[62] *Id.* § 4.3.5.

Trust.[63]   That agreement provides that, from the implementation of the settlement agreement forward, the class will be eligible to receive benefits from the Chrysler-UAW Trust consistent with the Chrysler retiree settlement agreement and the Chrysler-UAW Trust benefits plan, already in effect for Chrysler retirees.[64]   The class will receive the same benefits as UAW-represented Chrysler retirees.[65]   Thus, the benefits received by the class will "mirror" the benefits received by Chrysler retirees, which was the relief sought by plaintiffs in the *Beaty* case.  The settlement agreement also allows Continental to settle its other post-employment benefit liabilities to the class.[66]

## F.   Motion for Class Certification and Preliminary Settlement Approval

On August 31, 2011, plaintiffs filed a motion to certify a class of individuals who were former Continental employees, who were represented in collective bargaining by the UAW, who had retired from the Huntsville facility, and who were not otherwise entitled to receive benefits from the Chrysler-UAW Trust.[67]   The parties identified 93 such individuals, along with their spouses and dependents, who met the

---

[63] Doc. no. 43-7 (Participation Agreement).

[64] *Id.* ¶¶ 4-5.

[65] *Id.*

[66] *See* Settlement Agreement §§ 3.2, 6.

[67] Doc. no. 36.

class criteria.[68]  Continental conditionally consented to the certification of the class.[69]

On January 28, 2012, the parties filed a joint motion for preliminary approval of the settlement agreement.[70]  On February 6, the court granted that motion, preliminarily approving the settlement.[71]  The court also granted the motion for conditional class certification, and ordered Continental to send the class notice to each class member by February 14, 2012.[72]  Continental provided notice to the class members on February 13th, and to the United States Attorney General and the attorneys general of Alabama and Tennessee, the states where the class members reside, on February 17th.[73]  The court ordered that any class member wishing to object to the terms of the settlement must make a written objection on or before March 4, 2012.[74]  No written objections were lodged.

On April 4, 2012, the court conducted a final fairness hearing.  At the fairness hearing, based on the findings of fact outlined above, the court stated that it would grant its final approval to the Settlement Agreement.  The court determined that there was no evidence of collusion between the parties.  Indeed, contentious litigation in

---

[68] *Id.* ¶ 4.

[69] Doc. no. 39.

[70] Doc. no. 43.

[71] Doc. no. 45.

[72] *Id.*; doc. no. 46.

[73] Doc. no. 49-12 (Declaration of Stanley Weiner) ¶¶ 2, 5.

[74] Doc. no. 46, at 2.

multiple courts, followed by many months of extensive negotiations, made it clear that the parties acted at arms' length and in good faith at all times. Class counsel diligently investigated the proposed settlement, and concluded that it was fair, reasonable, and adequate for the class. This case does not involve a limited fund, an artificially created limited fund, or a limited pool of assets for the satisfaction of competing claims.

## II.  CONCLUSIONS OF LAW

### A.  Class Certification

The court reiterates the findings and conclusions set forth in its Memorandum Opinion and Order of February 6, 2012.[75]  Those findings and conclusions are adopted as if contained herein. The requirements of Federal Rules of Civil Procedure 23(a) and (b)(2) are satisfied.

### B.  Final Approval of the Settlement Agreement

Any class action settlement requires court approval. Fed. R. Civ. P. 23(e). Initially, the court must grant preliminary approval of the settlement. *See, e.g.*, *Dalton v. Cardworks Servicing, LLC*, No. CA 09-00563-CB-C, 2010 WL 5341939, at *2 (S.D. Ala. Nov. 19, 2010) ("The Court's initial task is to make a 'preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class.'") (quoting *Smith v. William Wrigley Jr. Co.*, No. 09-60646-CIV,

---

[75] Doc. no. 45.

2010 WL 2401149, at *1 (S.D. Fla. June 15, 2010)).

### 1.    Factors for evaluating fairness

After conducting a fairness hearing, "[i]t is well settled that in order to approve a settlement, the district court must find that it is fair, adequate and reasonable and is not the product of collusion between the parties." *Carnegie v. Mutual Savings Life Insurance Co.*, No. CV-99-S-3292-NE, 2004 WL 3715446, at *17 (N.D. Ala. Nov. 23, 2004) (Smith, J.) (internal quotation marks and citations omitted).  The court should consider six factors when evaluating the fairness, reasonableness, and adequacy of the proposed terms of settlement:

> (1)    the stage of the proceedings at which the settlement was achieved;
>
> (2)    the likelihood of success at trial;
>
> (3)    the range of possible recovery;
>
> (4)    the point on or below the range of possible recovery at which the settlement is fair, adequate, and reasonable;
>
> (5)    the complexity, expense, and duration of litigation; and
>
> (6)    the substance and amount of opposition to the settlement.

*Id.* (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).  There is a "strong judicial policy favoring settlement."  *Bennett*, 737 F.2d at 986.

### a.    The stage of proceedings at which the settlement was achieved

In evaluating the stage at which a settlement occurred, the court must be satisfied that counsel has "achieved the desired quantum of information necessary to achieve a settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977).[76] Formal discovery is not a condition precedent to settlement. *See In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 211 (5th Cir. 1981).

Even though the parties reached the settlement agreement before extensive discovery was conducted, that fact is not consequential "because the parties had equal access to the core legal agreements at issue" and, thus, could enter into negotiations without the necessity of formal discovery.[77] The parties had been negotiating the impact of the plant closing on retiree benefits since November of 2009, and litigating the issues involved in this case since 2010.[78] Over the course of that litigation, the parties filed numerous declarations and accompanying documents, which informed the litigation and negotiation process. During the effects bargaining negotiations, the parties provided each other with additional information, and undertook their own independent studies of the settlement agreement.

Thus, the proceedings have advanced sufficiently for the parties to reach an

---

[76] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[77] Doc. no. 43 ¶ 21.

[78] *Id.*

agreement that is fair, adequate, and reasonable. The "facts suggest that the proceedings were fairly advanced, and that the parties had sufficient opportunity to evaluate the strengths and weaknesses of the case," which provides a "sound basis to evaluate the proposed settlement." *Carnegie*, 2004 WL 3715446, at *19.

### b.   The likelihood of success at trial

Both plaintiffs and Continental faced the risk of an adverse adjudication at trial. The Eleventh Circuit has not ruled definitively on whether retirement benefits have vested in a factual scenario similar to that presented in these consolidated cases. *Compare United Steelworkers of America v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988) (holding that benefits had vested, and employer was obligated to pay, even after expiration of agreement) *with Stewart v. KHD Deutz of America, Corp.*, 980 F.2d 698 (11th Cir. 1993) (distinguishing *Conners Steel* where contract language was ambiguous, and remanding for consideration of extrinsic evidence to determine whether benefits had vested). With success at trial guaranteed to neither party, this factor weighs in favor of final approval of the settlement; there is nothing unfair, unreasonable, or inadequate about the settlement of a case with an uncertain outcome. *See Dalton v. Cardworks Services, L.L.C.*, No. 09-00563, 2010 WL 5341939, at *6 (S.D. Ala. Nov. 19, 2010).

### c.    The range of possible recovery

In their complaint, plaintiffs sought relief in the form of retiree medical benefits mirroring those provided to UAW-represented Chrysler retirees by the Chrysler-UAW Trust.[79]   If these cases were to proceed to trial and Continental to prevail, plaintiffs could be left with no retiree benefits at all.   Thus, the high end of the range of trial recovery would be benefits equal to those provided to former Chrysler employees through the trust, and the low end is no recovery at all.   The terms of the settlement agreement require Continental to add funds to the trust already serving the Chrysler retirees so that plaintiffs may receive benefits from that trust for the remainder of their respective lives.[80]   In other words, the settlement provides plaintiffs with a recovery matching their best potential outcome at trial.

Although the settlement awards plaintiffs the exact relief they sought in their complaint, it is beneficial to Continental as well.   The settlement agreement allows Continental to resolve all issues stemming from the closure of the Huntsville facility. It additionally allows Continental to relinquish the responsibility of being the plan administrator for plaintiffs' retiree medical benefits, and to remove retiree medical liability from its corporate balance sheet.[81]   In sum, all considerations indicate that the

---

[79] Doc. no. 1, at 12.

[80] *See generally* doc. no. 49-1 § 4.

[81] Doc. no. 43 ¶ 17.

settlement agreement is fair, adequate, and reasonable for all parties, based on the range of possible recovery.

### d.   The point on or below the range of possible recoveries at which the settlement is fair, adequate, and reasonable

The fourth factor for evaluation is inextricably linked with the third.  As discussed in the previous subsection, the proposed settlement agreement lies at the maximum end of the range of possible recoveries for plaintiffs.  Thus, it is undeniably fair, adequate, and reasonable from their point of view, and this factor weighs in favor of approval of the settlement.

### e.   The complexity, expense, and duration of litigation

Retiree health benefit class action litigation is frequently high in cost and long in duration.  *See, e.g.*, *Stewart v. KHD Deutz of America Corp.*, 75 F.3d 1522, 1524 (11th Cir. 1996) (noting that the action was commenced in 1991).  As previously stated, the parties have been negotiating the issue of retiree medical benefits since November of 2009, and litigating the issue (in multiple actions) since September of 2010.  The parties began negotiating a resolution to this litigation in April of 2011, but took five months to reach accord on the basic terms of the settlement agreement.[82] The parties have already incurred considerable expense in the process of reaching the

---

[82] *Id.* ¶ 19.

settlement agreement.[83]   Approving the settlement will avoid unnecessary further expenditure of the resources of the parties and of the court.  This factor supports a finding that the settlement is in the best interest of the class and should be approved, because of the "already lengthy duration" of the case and the likelihood of expenses increasing even further.  *In re Motorsports Merchandise Antitrust Litigation*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000).

### f.    The substance and quantity of opposition to the proposed settlement

Continental provided all class members with written notice of the preliminary approval of the settlement agreement on February 13, 2012.[84]   The class notice informed them of their right to object to the settlement, and stated that any class member wishing to object at the fairness hearing was required to file written notice with the court by March 4, 2012.[85]   No objections were filed with the court, and no class members attempted to object at the final fairness hearing.  Additionally, class counsel met with class members on August 30, 2011, and "those retirees and their spouses at the meeting expressed support for the settlement."[86]  The lack of objections "suggests that the terms are satisfactory."  *Id.*

---

[83] *Id.*

[84] Doc. nos. 47-48.

[85] Doc. no. 47-1.

[86] Doc. no. 50 (Brief in Support of Motion for Final Approval), at 11.

Based upon a review of the foregoing factors, this court finds that the proposed settlement agreement appears to be fair, adequate, and reasonable.  Thus, the court finds that the motion for final approval of the settlement agreement is due to be granted.

### 2.     The Labor Management Relations Act

The settlement agreement provides for Continental to make certain payments to the Chrysler-UAW Trust in connection with the resolution of this case.  Section 302 of the LMRA makes it unlawful for an employer to give something of value to a union and for a union to accept such a payment.  *See* 29 U.S.C. §§ 186(a) and (b). Section 302(c)(2) provides an exception to this prohibition, allowing an employer to make payments to a union in settlement of a disputed claim.  *See* 29 U.S.C. § 186(c)(2).

Courts have concluded that Section 302(c)(2) permits payments arising from a settlement agreement, court judgment, or other judicial resolution.  *See, e.g.*, *Redington v. The Goodyear Tire & Rubber Co.*, No. 07-cv-1999, 2008 WL 3981461, at *19 (N.D. Ohio Aug. 22, 2008) (settlement agreement in retiree class action); *Humility of Mary Health Partners v. Local 377 Chauffeurs, Teamsters, Warehousemen & Helpers of America*, 296 F. Supp. 2d 840, 848 (N.D. Ohio 2003) (arbitrator's award); *White v. National Football League*, 836 F. Supp. 1458, 1494 (D.

Minn. 1993) (settlement agreement).

The payments Continental will make to the Chrysler-UAW Trust pursuant to the settlement agreement will be made to resolve a disputed claim regarding the scope, if any, of retiree health benefits Continental owes to the class.  Those payments, therefore, are approved pursuant to Section 302(c)(2) of the LMRA, 29 U.S.C. § 186(c)(2).

### 3.     The Class Action Fairness Act

The Class Action Fairness Act of 2005, 28 U.S.C. § 1711 *et seq.* ("CAFA"), requires the defendant in a class action to "serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement . . . ." 28 U.S.C. § 1715(b).  Pursuant to the CAFA, a court may not issue an order approving a final settlement until at least 90 days after notice has been provided to the appropriate officials.  *Id.* § 1715(d).  Continental provided notice to the relevant attorneys general on February 17, 2012.[87]  Ninety days have passed, and no objection has been filed by any State or Federal official upon whom notice was served.  Thus, this court may, in accordance with the CAFA, enter an order of final approval of the settlement.

### 4.     Retention of Jurisdiction

Pursuant to the settlement agreement, the Court retains exclusive jurisdiction

---

[87] Doc. no. 50, at 11.

to resolve any disputes relating to, arising out of, or in connection with the enforcement, interpretation, or implementation of the settlement agreement.  *See Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 382 (1994) (stating that a district court retains jurisdiction to enforce a settlement agreement if it either (1) has language in the dismissal order indicating its retention of jurisdiction or (2) incorporates the terms of the settlement agreement into the dismissal order).

### III.  CONCLUSION AND ORDER

For the reasons stated herein, the court APPROVES the parties' settlement agreement in its entirety.  The settlement agreement is binding on UAW, Continental, and all class members.  Class members release all claims that were asserted or could have been asserted in this lawsuit.  The above-styled actions are DISMISSED with prejudice.  Costs are taxed as paid.  The clerk is directed to close this file.

DONE and ORDERED this 21st day of May, 2012.

_____
United States District Judge